# CIRCUIT COURT OF FAIRFAX COUNTY

Jeffrey C. Wright

v.

James G. Kincheloe, Jr.

v.

Kathleen P. Whyard

Case No. CL-2010-3617

Kathleen P. Whyard

v.

James G. Kincheloe, Jr.

Case No. CL-2010-7469

October 20, 2010

BY JUDGE RANDY I. BELLOWS

On October 8, 2010, this Court heard oral argument on the Motions to Disqualify filed by Defendant, James G. Kincheloe, Jr. At the conclusion of the hearing, the Court informed the parties that it would take the matter under advisement. After reviewing the parties' briefs and in light of the oral arguments made, the Court is now prepared to rule.

## I. *Background*

On or about December 2, 2003, Plaintiff Kathleen P. Whyard initially retained James Kincheloe to represent her during her separation and divorce.

On January 12, 2009, Whyard's brother-in-law, Jeffrey C. Wright, wired $150,000 into Kincheloe's Trust Account which was intended to be used for Whyard's legal expenses. On March 20, 2009, Whyard and her former husband entered into a Property Settlement Agreement which obviated the need for trial.

David Duff and his firm represent Wright and Whyard in separate lawsuits against Kincheloe. Wright retained Duff to represent him in his fraud claim against Kincheloe on February 22, 2010. Wright filed his Complaint on March 15, 2010, alleging that Kincheloe intentionally lied to him for the purpose of obtaining $150,000 through false pretenses. An Amended Complaint making identical allegations was filed on May 10, 2010. Whyard retained Duff on May 5, 2010, to represent her in a legal malpractice claim against Kincheloe for substandard representation during her divorce case. Whyard filed her Complaint against Kincheloe on May 21, 2010.

On May 5, 2010, Wright and Whyard executed a Waiver of Personal Conflict ("Waiver") whereby they both agreed to "waive, release, and forego any conflict of interest that could conceivably be created by [Duff] in simultaneously representing each of them in their respective claims against attorney Kincheloe." ¶ 6.

On June 11, 2010, Judge McWeeny granted Kincheloe's motion for leave to file a Third-Party Complaint against Whyard in Wright's case. In his Third-Party Complaint, Kincheloe alleged that the $150,000 was a loan from Wright to Whyard. In the alternative, Kincheloe alleged that Whyard is liable to Wright for the legal fees he incurred on her behalf. Kincheloe denies that he is liable to Wright, but, if he is found liable, Kincheloe claims that Whyard is liable for any damages awarded against him.

Duff mistakenly believed that his firm would be representing Whyard in the defense of the Third-Party Complaint and notified Kincheloe's counsel of his willingness to accept service of the Third-Party Complaint on Whyard's behalf. On or about June 16, 2010, Kincheloe's counsel notified Duff via e-mail that he believed there was an incurable conflict of interest in his representation of both Wright and Whyard pursuant to Rule 1.7(b) of the Rules of the Supreme Court of Virginia. Doug Milman, Esq., of the law firm of Wexell Milman represents Whyard in defending against Kincheloe's Third-Party Complaint.

Judge Roush sustained Whyard's Demurrer to the Third-Party Complaint on September 24, 2010, with leave to amend. Kincheloe filed

an Amended Third-Party Complaint with nearly identical allegations as the initial Third-Party Complaint.

Also on September 24, 2010, Kincheloe filed Motions to Disqualify Duff from representing both Wright and Whyard in their suits against Kincheloe. Kincheloe's contention is that Wright's payment of $150,000 into Kincheloe's Trust Account for Whyard's legal services was a loan from Wright to Whyard which remains unpaid. In his Motions, Kincheloe argues that Wright and Whyard have directly adverse interests in the outcome of Wright's suit because of this loan agreement. If Wright is successful in his suit against Kincheloe, Kincheloe alleges he has the right to recover at least $150,000 from Whyard for Kincheloe's legal services. If Wright is unsuccessful in his suit, Kincheloe alleges that Whyard is liable to Wright for the outstanding loan.

## II. *Analysis*

### A. *Legal Standard*

Rule 1.7 of the Virginia Rules of Professional Conduct prohibits the representation of a client if it involves a "concurrent conflict of interest." Va. Sup. Ct. R., pt. 6, sec. II, 1.7 (2010). A concurrent conflict of interest exists if:

> (1) the representation of one client will be directly adverse to another client; or
> (2) there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.

*Id.* If a concurrent conflict exists, a lawyer may continue the representation if: (1) each client gives written consent after consultation; (2) the lawyer reasonably believes he can provide competent and diligent representation to the clients; (3) the representation is lawful; and (4) "the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal." *Id.*

### B. *Findings*

The issues in this case are (a) whether a conflict of interest is inherent in Duff's concurrent representation of Wright and Whyard and (b), if a conflict exists, whether it is cured either by the Waiver executed by Wright

and Whyard or the fact that Whyard has separate legal representation to defend against Kincheloe's Third-Party Complaint.

In deciding these Motions, the Court must balance a client's right to free choice of counsel with maintenance of the highest ethical and professional legal standards. *In re Asbestos Cases*, 514 F. Supp. 914 (E.D. Va. 1981), *rev'd on other grounds sub nom. Greitzer & Locks v. Johns-Manville Corp.*, 1982 U.S. App. LEXIS 21211 (4th Cir. Va. Mar. 5, 1982). Client loyalty and independent judgment are strong ethical concerns inherent in Rule 1.7. *See* Va. Sup. Ct. R., pt. 6, sec. II, 1.7, Notes [1], [6], [8] (2010). With that in mind and "with a view of preventing the appearance of impropriety, [the Court] is to resolve all doubts in favor of disqualification." *United States v. Clarkson*, 567 F.2d 270, 273, n. 3 (4th Cir. 1977). A firm may not represent a plaintiff and a third-party defendant with adverse interests unless it is "obvious" that adequate multiple representation is possible. *See Dacotah Marketing v. Versatility, Inc.*, 21 F. Supp. 2d 570, 582 (E.D. Va. 1998).

However, in making its findings, the Court is also mindful "that the disqualification of a party's chosen counsel is a serious matter which cannot be based on imagined scenarios of conflict." *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724 (E.D. Va. 1990) (citing *Richard Hilton Associates v. City of Richmond*, 690 F.2d 1086 (4th Cir. 1982)). The moving party on any disqualification motion bears a "high standard of proof to show that disqualification is warranted. *Id.* (citing *Government of India v. Cook Industries, Inc.*, 569 F.2d 737 (2d Cir. 1978)).

Even assuming *arguendo* that the allegations in Kincheloe's Amended Third-Party Complaint are true, the Court finds there is no concurrent conflict of interest. Based on the pleadings, it appears that Wright and Whyard's interests align regardless of whether Wright is successful in his suit against Kincheloe. In his Complaint, Wright alleges that Kincheloe made certain representations to him that the $150,000 was necessary "to pay for depositions and experts, and discovery matters." ¶ 8. Wright further alleges that Kincheloe knew these statements were false at the time he made them, had no intention of conducting further discovery or retaining experts, and made these statements to induce Wright to pay him the $150,000. ¶¶ 14-20.

If Wright is successful in his suit against Kincheloe, he would likely recover the $150,000 plus any additional damages. Kincheloe would then proceed against Whyard pursuant to the Amended Third-Party Complaint for at least $150,000 plus any additional fees incurred under the Retainer Agreements between Whyard and Kincheloe. ¶ 10. Assuming that Kincheloe is successful, Whyard may be liable to Kincheloe for at least $150,000. The Amended Third-Party Complaint does not include an exact prayer for damages, but Kincheloe alleges that Whyard's liability exceeds $150,000. ¶ 10.

If Wright is unsuccessful in his suit against Kincheloe, Kincheloe would likely retain the $150,000 Wright paid into his Trust Account for Whyard's legal fees. Presumably, Whyard would then be responsible to repay the outstanding loan to Wright in that amount. Based on the Court's analysis of these two possibilities, Whyard's monetary obligation is the same regardless of whether Wright is successful in his suit against Kincheloe. Wright and Whyard's interests are not directly adverse, and there is no significant risk that the representation of Whyard will be materially limited by the lawyer's responsibilities to Wright and *vice versa*. Kincheloe has not presented any other argument for why a conflict exists in these cases. Therefore, the Court finds there is no concurrent conflict of interest.

In the alternative, even if the Court found there was a concurrent conflict of interest, Wright and Whyard's written waiver and Whyard's retention of alternate counsel for the third-party suit against her cure the conflict. Under Rule 1.7, concurrent conflicts of interest can be waived if both clients give their informed, written consent, there is nothing illegal about the representation, and no claims exist between them. Va. Sup. Ct. R. pt. 6, sec. II, 1.7 (2010). Both Wright and Whyard signed the written Waiver which states that "the [Duff] Firm has informed both Whyard and Wright of the potential conflict of interest that could arise if it represented Whyard in such a legal malpractice action" and "both Wright and Whyard want to waive any potential conflict of interest created by virtue of the Firm representing each of them in the aforesaid matters." ¶¶ 4-5. The Court finds that Wright and Whyard waived any potential conflict in Duff's concurrent representation of both their claims against Kincheloe.

Some concurrent conflicts of interest cannot be waived even with the clients' consent. Va. Sup. Ct. R., pt. 6, sec. II, 1.7, Note [19] (2010) ("when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's consent.") However, this case does not involve an unwaivable conflict. The Court finds that Wright and Whyard's cases are analogous to the scenario in Legal Ethics Opinion 379, which was issued on August 11, 1981. In that opinion, the Committee determined that an attorney could properly represent plaintiff drivers of two separate automobiles in their respective claims against defendant driver even though defendant driver filed a third-party suit against one of the plaintiff drivers. This was permissible because the plaintiffs consented to the concurrent representation after full disclosure by the attorney. The Court finds that the Waiver is similarly sufficient to cure the potential conflict of interest in this case.

An additional safeguard in this case is that Whyard has already retained Milman to represent her in Kincheloe's third-party action against her. The Court finds that, because Duff only represents Whyard in her

separate lawsuit against Kincheloe, there can be no conflict of interest stemming from Kincheloe's Amended Third-Party Complaint.

Accordingly, for the reasons stated above, Defendant Kincheloe's Motions to Disqualify are denied.